UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMALA HASAN,

       Plaintiff,

Case No. 10-14043

v.

District Judge Arthur J. Tarnow
Magistrate Judge R. Steven Whalen

RELIANCE STANDARD LIFE INSURANCE
COMPANY, a foreign corporation,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

     Before the Court is a Complaint for Long Term Disability ("LTD") benefits brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, *et. seq.* Defendant's *Motion for Judgment on the Administrative Record* [Docket #10] and Plaintiff's *Motion to Reverse the Denial of Long Term Disability Benefits* [Docket #11] have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be GRANTED and that Plaintiff's motion be DENIED.

     **I.   FACTUAL AND PROCEDURAL BACKGROUND**

     On May 17, 1999, Pamala Hasan ("Plaintiff") was hired as an executive assistant by Plante & Moran, Inc. On July 1, 2006, Plaintiff purchased a disability policy issued by Defendant Reliance Standard Life Insurance Company ("Reliance"), which was administered by Matrix Absence Management, Inc. ("Matrix"). Plaintiff alleges that she stopped working on February 22, 2007 due to severe pain in both hands (AR 430, 461).

Under the terms of the policy, issued by Reliance, the claimant is eligible for benefits provided that she:

> (1) is Totally Disabled as the result of a Sickness or injury covered by this Policy;
>
> (2) is under the regular care of a Physician;
>
> (3) has completed the Elimination Period; and
>
> (4) submits satisfactory proof of Total Disability to us.

(AR 67).

In April, 2007 David M. McElroy, M.D., a treating physician, noted that Plaintiff was undergoing physical therapy (Tr. 215-216). In May, 2007, Bruce Silverman, D.O. reported that Plaintiff experienced "dizziness, bilateral hand weakness [and] cervical spine symptoms" (AR 209-212, 436). He opined that Plaintiff should not work until a re-evaluation on July 11, 2007 (AR 437). On May 11, 2007, Dr. John H. Traylor, III, M.D., citing the results of a recent MRI of the cervical spine, found that Plaintiff should undergo a series of epidural injections (AR 224-226).

After Plaintiff's claim for long term benefits was denied, she filed suit in this Court March 21, 2008. Case. No. 08-11240. On February 18, 2009, the Honorable Arthur J. Tarnow granted in part and denied in part Plaintiff's motion for summary judgment, finding that the decision to deny her benefits through the end of the elimination period was arbitrary and capricious. *Id., Docket #14* at 1. However, he declined to rule on the period after May 23, 2007. The Court remanded the case for determination of whether Plaintiff was disabled after the end of the elimination period. *Id.* In March and April, 2009, Defendant told Plaintiff's attorney that Plaintiff's medical files from May, 2007 forward were required to assess her claim (AR 297, 307). August 12, 2009 claim notes by Defendant state that

Plaintiff's attorney had not been able to obtain records (AR 156). Claim notes from later the same month state that Plaintiff's attorney informed Defendant that Plaintiff had "changed doctors to the VA and [was] working on getting an MRI" (AR 156).

In the meantime, Plaintiff applied for Disability Insurance Benefits under the Social Security Act (AR 141-147). On February 26, 2010, Administrative Law Judge ("ALJ") Theodore W. Grippo awarded benefits, finding Plaintiff disabled as of February 22, 2007 (AR 147).

Following the Court's remand, on November 18, 2009, Plaintiff was found not disabled since May 23, 2007 (AR 125-129). On August 12, 2010, Plaintiff's appeal of the November 18, 2009 decision was denied (AR 1-12). Plaintiff filed suit in this Court on October 8, 2010.

## II.  TREATING AND NON-EXAMINING SOURCES[1]

### A.  Plaintiff's Treating and Consultive Sources

#### 1. Diana Soulias, M.D.

On February 26, 2007, Plaintiff reported tingling and burning pain in her hands (AR 199). Plaintiff stated that exercise and soaking did not relieve her symptoms (AR 199). A rheumatoid test was negative (AR 201).

#### 2. David M. McElroy, M.D.

In March, 2007, Plaintiff reported no relief from either Darvocet or Anaprox (AR 205). She exhibited an excellent range of motion and a normal gait (AR 206). She reported

---

[1] A number of the records and medical opinions pertain to Plaintiff's condition on or before May 23, 2007. While consideration of whether Plaintiff was unable to work through May 23, 2007 is of course barred by *res judicata*, the records and opinions are included for background purposes.

hand pain upon brushing her hair and cooking (AR 206). Dr. McElroy noted that "the etiology of pain complaints are unclear" (AR 207). He ordered imaging studies and recommended physical therapy (AR 207). Imaging studies performed the following month were unremarkable for soft tissue problems (AR 208). The following month, Dr. McElroy found that Plaintiff was "making good gains" with physical therapy (AR 215). On April 19, 2007, he predicted that Plaintiff would be "able to get back to work in two or three weeks . . . without restrictions" (AR 216). Nonetheless, he acknowledged that additional testing was pending (AR 216). The following day, an MRI found minimal narrowing of the disc space at C4-C5 and C5-C6 with no other abnormalities (AR 217). An MRI of the brain was normal (AR 218). Imaging studies of the chest and an ENG were also normal (AR 220, 222).

### 3.  Neurologist Bruce Silverman, D.O.

In March, 2007, a nerve conduction study of the upper extremities was unremarkable (AR 204). The following month, Plaintiff reported dizziness, hand weakness, and "cervical spine symptoms" (AR209). Dr. Silverman found the conditions of cervical radiculopathy and vertigo (Tr. AR 211). Later the same month, Plaintiff reported that her dizziness had resolved (AR 227). She exhibited normal grip strength (AR 227). On July 18, 2007, Dr. Silverman found that Plaintiff should not return to work until September 19, 2007 (AR 232).

### 4.  Dr.  John H. Traylor, III, M.D.

In May, 2007, Dr Traylor noted that Plaintiff's neck pain had improved (AR 224). Plaintiff demonstrated full grip strength and an excellent range of spinal motion (AR 224). However, a Tinel's sign was positive (AR 226). Palpitation at C6 was painful (AR 226). Dr. Traylor recommended three steroid injections at two week intervals (AR 226).

### 5.  Dr. Adler (AR 132)

In October, 2009, Dr. Adler completed "Disorders of the Spine Interrogatories," finding that Plaintiff had a limited range of neck motion but no restrictions in lower back motion (AR 131). He found that Plaintiff was capable of walking on a sustained basis (AR 131). Dr. Adler found that Plaintiff's medication side effects of dizziness and nausea would interfere with her work. (AR 131). He opined that Plaintiff was incapable of any full-time work due to medication side effects. (AR 131). He found that Plaintiff had been incapacitated since February 22, 2007 (AR 132).

### 6.  S.E. Newman, M.D. (AR 135)

In April, 2010, Dr. Newman, hired to conduct an IME, observed a limited range of shoulder motion (AR 134). Plaintiff reported foot swelling and pain (AR 134). She demonstrated reduced strength in the upper extremities (AR 134). Dr. Newman found that Plaintiff was unable to sit for more than 20-30 minutes, stand for 10-15 minutes, or walk for more than 30 minutes on a non-repetitive basis. (AR 135). He found further that she was unable to lift 10 or more pounds; should avoid all pushing, pulling, grasping, gripping, and fine manipulative activities as well as climbing, squatting, crawling, kneeling, and bending (AR 135).

### 7.   Savita Nallapa, M.D.

In January, 2008, Plaintiff, receiving treatment from a Veterans' Administration hospital, told Dr. Nallapa that hand pain kept her awake (AR 237). She reported that she avoided pain medication because it made her "groggy" (AR 239). She was prescribed wrist splints (AR 240). A blood test ruled out Lupus (AR 244). In June, 2008, an EMG of the upper extremities was negative for Carpal Tunnel Syndrome (AR 254). The same month, an MRI showed a mild disc bulge at C4-C5 and a small disc bulge at C5-C6 (AR 256). Also in June, 2008, Plaintiff requested wrist splints (AR 259). Jun Li, M.D. referred to the bulges at

C4-C5 and C5-C6 as "mild cervical spondylosis" (AR 261). Treating notes state that Plaintiff was taking Celebrex, using lidoderm patches, and undergoing physical therapy (AR 263). An August, 2008 bone scan found no evidence of osteoporosis (AR 267). In October, 2008, Plaintiff reported continued hand pain and lower back pain radiating into her legs (Tr. 270). Tinel's and Phalen's signs were negative (AR 271). The same month, Plaintiff was advised to discontinue Lidoderm patches and take non-steroidal anti-inflammatory drugs ("NSAIDs") instead (AR 276). Plaintiff reported that she continued to perform home exercises (AR 279). She was deemed "able to walk without any assistive devices for unlimited distance" (AR 279). A November, 2008 MRI of the lumbar spine showed a small bulge at L1-L2 and a disc bulge extending to bilateral neuroforamina at L4-L5 with "probable impingement of [the] left L5 nerve root." (AR 281-282).

In February, 2009, Plaintiff reported that she was able to walk for three miles on a treadmill (AR 286). She indicated that she was unable to work on the computer for more than 35 minutes, or hand-write more than one page (AR 292). She also reported back pain radiating into her arms and lower extremities, as well as headaches with light sensitivity (AR 292).

### B. Defendant's Consultive and Non-Examining Sources

### Hermann Banks, M.D.

In June, 2009, Dr. Banks conducted an IME on behalf of Defendant (AR 160-166). Plaintiff reported that severe arm and hand pain prevented activities of daily living (AR 160). She stated that she was unable to work at a computer for more than 40 minutes at a stretch and was unable to write adequately (AR 160-161). She also reported neck pain and a reduced range of motion (AR 161). She stated that dizziness and vertigo had resolved (AR 161). Dr. Banks' report states that Plaintiff said that "muscle relaxer cannot be taken if she needs to be

more alert around her children" (AR 161). Plaintiff exhibited 5/5 grip strength but tenderness in the shoulders, neck, wrists, and hands (AR 162). She demonstrated a positive Tinel's sign in both wrists (AR 162).

Dr. Banks observed that Plaintiff alleged "a constellation of symptoms which cannot be clearly explained based upon the diagnostic test results . . ." (AR 164). He noted that Plaintiff had been "recalcitrant to all treatment, including injection therapy." (AR 164). He observed testing for Carpal Tunnel Syndrome was negative and that imaging studies of the cervical spine did not support Plaintiff's professed level of limitation (AR 165). He found "no limitations or restrictions" from March, 2007 forward (AR 165).

### 2.  Dr. Philip Marion, M.D.

On June 24, 2010, Dr. Marion conducted a non-examining review of Plaintiff's treating and consultive records (AR 109-115). Citing records created between February and May, 2007, he noted that Plaintiff did not experience relief from steroid injections (AR 111). He noted that Plaintiff tested negative for Carpal Tunnel Syndrome and peripheral neuropathy (AR 112). He found that MRIs of the spine failed to correlate with Plaintiff's allegations (AR 112). He found that Plaintiff was capable of performing her former job from February, 2007 forward (AR 112).

### III.  The Administrative Decision

On August 12, 2010, Tiffany D. Dickerson found that the initial denial of LTD benefits was appropriate (AR 1-12). Dickerson found that Plaintiff's alleged limitations were disproportionate to the mild abnormalities found on the 2007 and 2008 MRIs (AR 8-9). Citing Dr. Adler's "disability opinion," she noted that the assessment did not correlate with objective evidence or treating notes (AR 9-10, 161). Ms Dickerson also noted that Dr. Newmann's finding that Plaintiff was unable to walk any distance or perform postural

activities contradicted Dr. Adler's assessment and the treating records (AR 10).

Finally, Dickerson acknowledged that Plaintiff had been found disabled by the Social Security Administration (AR 11). However, she stated that "the SSA may not have been privileged to review the results of the recent independent medical review, which was completed by Dr. Philip Marion, M.D. or other medical or vocational information [Reliance] may have developed as part of [the] claim" (AR 11).

## IV.    STANDARD OF REVIEW

Under ERISA, when a plan administrator, such as Defendant in this case, has the discretionary authority to determine eligibility for benefits, federal courts review a decision to deny benefits under "the highly deferential arbitrary and capricious standard of review." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 168-69 (6th Cir. 2003)(*citing Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th cir. 1996)). "[T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Williams v. International Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)(internal citations and quotations omitted).

Nevertheless, "[d]eferential review is not no review, and deference need not be abject." *McDonald, supra*, 347 F.3d at 172 (internal citations omitted). *See also Hackett v. Xerox Corp. Long-Term disability Income Plan*, 315 F.3d 771, 774-75 (7th Cir. 2003) ("Review under the deferential arbitrary and capricious standard is not a rubber stamp and deference need not be abject. Even under the deferential review we will not uphold a termination when

-8-

there is an absence of reasoning in the record to support it"); *Swaback v. American Info. Techs. Corp.*, 103 F.3d 535, 540 (7th Cir. 1996) ("Although we review the committees' actions in a deferential light, we shall not rubber stamp their decisions."); *Finazzi v. Paul Revere Life Ins. Co.*, 327 F.Supp.2d 790, 796 (W.D. Mich. 2004) ("the Court is not obliged to 'rubber stamp' [defendant's] termination of benefits where, considering all the evidence, its reasoning is not trustworthy."). "Rather, it requires us to review 'the quality and quantity of the evidence and the opinions on both sides of the issues.'" *Kovach v. Zurich American Ins. Co.,* 587 F.3d 323, 328 (6th Cir. 2009)(*citing McDonald*, *supra,* 347 F.3d at 172 (internal punctuation omitted).

## V. ANALYSIS

### A. The Correct Standard of Review

Plaintiff argues that the standard of review is *de novo,* not arbitrary and capricious. *Plaintiff's Brief* at 10-13. *See Defendant's Response* at 7. However, the Plan language provides as follows:

> Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties (AR 63).

There is nothing ambiguous about this language. Therefore, the standard of review is "arbitrary and capricious," not "*de novo*." *McDonald, supra*.

### B. The Decision was Not Arbitrary and Capricious

Plaintiff argues that the administrative decision gave short shrift to the findings of her treating physicians, and "cherry picked," or relied selectively on findings that supported denial of benefits while disregarding findings that were favorable to her. She argues that the Defendant's non-examining consultive physician, Dr. Marion, "ignored Hasan's treating

physicians' opinions and conveniently selected the records that would support [his] conclusory opinion." *Plaintiff's Brief*, at 18.

Where a plan administrator is responsible for both determining eligibility and paying benefits, there is a conflict of interest that must factor into the determination of whether the denial of benefits was arbitrary and capricious. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). In this case, Matrix is a third-party administrator, so *Glenn* does not strictly apply. In *University Hospitals v. Emerson Elec. Co.*, 202 F.3d 839, 846-47 (6th Cir. 2000), cited by Plaintiff, the Court declined to rule definitively on whether a pure conflict exists when the plan is funded by the defendant and the defendant's board of directors appoints the plan administrator. However, the Court stated:

> Nevertheless, we believe it appropriate to observe here that the mere existence of fiduciary duties, which always are present in any benefit determination governed by ERISA, does not obviate the need to more carefully examine decisions that might be tainted by a conflict of interest. Courts should be particularly vigilant in situations where, as here, the plan sponsor bears all or most of the risk of paying claims, and also appoints the body designated as the final arbiter of such claims. Under these circumstances, the potential for self-interested decision-making is evident. *Id*. at 847, fn. 4.

Taking my cue from *University Hospitals*, I will therefore consider the potential conflict in this case in assessing whether Defendant's decision was arbitrary and capricious.

The Sixth Circuit has also cautioned that while, unlike Social Security cases, deference is not given to treating physicians, doctors hired by employers or insurance companies "may have an incentive to make a finding of 'not disabled' in order to save their employers money and preserve their own consulting arrangements." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832-33, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). While the opinion of a defense doctor is of course not automatically negated by virtue of his or her contractual relationship with a defendant, such opinion does merit the careful scrutiny that I will give it in this case.

-10-

There are some misstatements on the part of the defense doctors. For example, Dr. Banks noted that Plaintiff had been "recalcitrant to all treatment, including injection therapy" (AR 164), when it appears that Plaintiff received steroid injection therapy in May or June of 2007 (AR 226). Dr. Marion also referred to treating records from February to May, 2007, showing that Plaintiff received steroid injections (AR 211).

There are also opinions by Plaintiff's doctors that contradict the Plaintiff's own statements. For example, Dr. Adler found that the side effects of Plaintiff's medication–dizziness and nausea–would interfere with her work (AR 131). Plaintiff, on the other hand, told Dr. Banks that her dizziness had resolved (AR 161). Dr. Silverman also noted in March of 2007 that Plaintiff's dizziness had resolved (AR 227). In addition, although Dr. Adler opined that Plaintiff was incapable of any full-time work due to medication side effects, Plaintiff told Dr. Banks that the "muscle relaxer cannot be taken if she needs to be more alert around her children." (AR 161). There are no medication side effects if Plaintiff is not taking the medication.

Dr. Newman, who conducted an IME on Plaintiff's behalf, found that she was unable to walk more than 30 minutes on a non-repetitive basis (AR 135). However, Plaintiff said that she could walk three miles on a treadmill (AR 286).

If Dr. Newman's and Dr. Adler's opinions were fully credited, the Plan Administrator would have had a basis to find the Plaintiff disabled. And of course, there is the Social Security Disability determination that her medical conditions preclude her from any substantial gainful activity (the import of the Social Security determination will be discussed later). However, under the arbitrary and capricious standard, the Administrator's decision must be upheld if it "is possible to offer a reasoned explanation, based on the evidence," for the denial. *Williams v. International Paper, Inc.*, 227 F.3d at 712.

Unlike the rule in Social Security disability cases, treating physicians are not given deference in ERISA review. *Black & Decker Disability Plan v. Nord*, 538 U.S. at 832-33. Nevertheless, the Court in *Nord* felt constrained to add that "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* In addition, the Sixth Circuit recently held that while there is no "treating physician rule" in ERISA cases, "[w]hether a doctor has physically examined the claimant is indeed one factor that we may consider in determining whether a plan administrator acted arbitrarily and capriciously in giving greater weight to the opinion of its consulting physician." *Kalish v. Liberty Mutual/Liberty Life Assurance Co. Of Boston*, 419 F.3d 501, 508 (6th Cir. 2005).

Here, the Defendant had two consultive sources, Dr. Banks and Dr. Marion. Dr. Banks did conduct an IME on Plaintiff. Although Plaintiff exhibited tenderness in the shoulder, neck, wrists and hands, she had 5/5 grip strength, and tested negative for peripheral neuropathy. Dr. Banks also examined imaging studies of the cervical spine, and opined that they did not objectively support Plaintiff's claimed limitations (AR 160-165). He found "no limitations or restrictions" from March, 2007 forward.

Dr. Marion conducted a non-examining review of Plaintiff's medical file, agreeing with Dr. Banks' finding that objective MRI testing failed to support Plaintiff's claimed limitations. He opined that Plaintiff was capable of performing her former work from February, 2007 forward, noting that "[t]here has been no significant change in [Plaintiff's] medical status since 2/22/07." (AR 113).

Even assuming that the Defendant's consultive doctors overstate Plaintiff's functional abilities, the ultimate conclusion that Plaintiff was not disabled after February or March of 2007 is not so unsupported as to render the Administrator's decision arbitrary and capricious.

Consistent with Dr. Bank's post-remand observation that Plaintiff's symptoms "cannot be clearly explained based upon the diagnostic test results" (AR 164), Dr. McElroy, a treating source, stated that "the etiology of pain complaints are unclear." (AR 207). In April of 2007, Dr. McElroy found that Plaintiff was "making good gains" with physical therapy, and that she would be "able to get back to work in two or three weeks...without restrictions." (AR 216). Imaging studies were unremarkable (AR 217-222). In May of 2007, Dr. McElroy stated, "I cannot explain why [Plaintiff] subjectively feels that her hand cannot function as well as they appear to on clinical examination. She does not have any weakness, and prior EMG was negative." (AR 390). He further stated, "I have her off work to complete the [physical] therapy, but with no object[ive] findings to justify extended time off." *Id.*

Dr. Traylor, another of Plaintiff's physicians, determined in May of 2007 that Plaintiff's neck pain had improved, and that she had full grip strength and an excellent range of spinal motion (AR 224). Post-remand imaging studies from 2008, discussed by Dr. Nallapa, Plaintiff's treating physician from the VA Hospital, do not strongly support a finding of disability. The June, 2008 EMG was negative for Carpal Tunnel Syndrome (AR 254). An MRI from the same month showed a *mild* disc bulge at C4-C5 and a *small* disc bulge at C5-C6 (AR 256). Dr. Jun Li referred to these bulges as "*mild* cervical spondylosis" (AR 261)(emphasis added). A November, 2008 MRI showed a *small* bulge at L1-L2, as well as a bulge at L4-L5 with "probable" impingement of the left L5 nerve root. This latter bulge could be expected to cause pain, but there is no finding that it caused disabling pain.

Thus, post-remand clinical results, by themselves and read in the context of pre-remand test results, rationally support the Defendant's conclusion that notwithstanding Plaintiff's subjective complaints, there is little evidence to support her claim of disability. *See Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 382 (6th Cir. 1996) ("In the absence of any

definite anatomic explanation of plaintiff's symptoms, we cannot find that the administrator's decision to deny benefits was arbitrary and capricious").

I recognize that the Plaintiff was awarded Social Security Disability benefits on February 26, 2010, following a hearing before an ALJ on November 17, 2009. It is undoubtedly and understandingly puzzling to Plaintiff how a government agency can find her disabled from all substantial gainful employment, and yet the Defendant can deny her claim.

The Social Security Administration's decision is not binding on the Defendant. *See Black & Decker Disability Plan v. Nord*, 538 U.S. at 832-33. Nevertheless, such a determination is relevant, and cannot simply be ignored. The Sixth Circuit in *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 294 (6th Cir. 2005), held:

> [T]he SSA determination, though certainly not binding, is far from meaningless. As the Court said in *Black & Decker,* a plan administrator may not arbitrarily disregard the medical evidence proffered by the claimant, including the opinions of her treating physicians. 538 U.S. at 834, 123 S.Ct. 1965. Here, the SSA determination, at a minimum, provides support for the conclusion that an administrative agency charged with examining Calvert's medical records found, as it expressly said it did, objective support for [the treating physician's disability opinion].

In this case, the Defendant did not "arbitrarily disregard" either the Social Security decision or the Plaintiff's treating physicians. The Administrator discussed the Social Security decision as follows:

> As part of this review, we acknowledge your receipt of a favorable award for Social Security Disability (SSD) benefits. Please be aware that while we consider the determinations of the Social Security Administration (SSA) and other insurers, they are not binding on RLS's decision as to whether or [not] you client satisfies the definition of "Total Disability" as set forth in the Group Policy. A person's entitlement to each of these benefits may be based upon a different set of guidelines, which may sometimes lead to differing conclusions. In addition, each benefit provider may also be considering different medical evidence in the evaluation of a claim. For example, in your client's situation, the SSA may not have been privileged to review the results of the recent independent medical review, which was completed by Dr. Philip Marion, M.D. or other medical or vocational information RSL may have developed as part of her claim adjudication. If the SSA were to review this information in addition

to any other information obtained by RSL they may reach a similar conclusion. In any event, the receipt of SSD benefits does not guarantee the issuance of LTD benefits, or vice versa (AR 11-12).

The ALJ's opinion (AR 141-147) assigns controlling weight to the opinion of Plaintiff's treating source, Dr. Nallapa, and while it cites MRI's from June and November, 2008 (AR 144), it does not refer to any other treating *or* consultive medical source. The decision states that Dr. Nallapa's opinions "are not inconsistent with other substantial evidence in the record." As Defendant pointed out, the findings and opinion of Dr. Marion was not in the record in the Social Security case. I find that the Defendant has considered the Social Security Disability decision, and has adequately explained why its LTD decision reaches a different result.

If this case were subject to *de novo* review, I might come to a different conclusion. And I in no way mean to trivialize Plaintiff's subjective complaints, or suggest that she has *no* physical limitations. But because the Defendant has provided a reasoned explanation for its decision, I cannot say that the decision was arbitrary and capricious. I therefore recommend that the decision to deny LTD benefits be affirmed.

## VI.  CONCLUSION

For these reasons, I recommend that Defendant's motion for judgment on the administrative record [Doc. #10] be GRANTED and that Plaintiff's motion to reverse the denial of Long Term Disability [Doc. #11] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932

F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Date: March 7, 2012

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on March 7, 2012.

Johnetta M. Curry-Williams<br>
Case Manager